UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE GUARDRAIL, INC., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 3:11-cv-01010 |
| v. ) | |
| ) | |
| STATE OF TENNESSEE ) | JUDGE SHARP |
| DEPARTMENT OF ) | MAGISTRATE JUDGE KNOWLES |
| TRANSPORTATION, JOHN C. ) | |
| SCHROER, in his official capacity, and ) | |
| STEVE M. HALL, in his official capacity, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM

Plaintiff Tennessee Guardrail, Inc. ("Guardrail" or "Plaintiff") has brought this action against the Tennessee Department of Transportation ("TDOT"), John C. Schroer in his official capacity as TDOT Commissioner, and Steve M. Hall in his official capacity as TDOT Suspending Official (collectively, "Defendants" or "Government") as a result of the suspension imposed by the Government to exclude Guardrail from bidding on or entering into TDOT contracts. This matter is presently before the Court on Plaintiff's Motion for a Temporary Restraining Order (Docket Entry No. 4), to which Defendants filed a brief in opposition (Docket Entry No. 11). Plaintiff seeks injunctive relief requiring that TDOT lift the contract suspension it imposed on or about June 2, 2011 and/or enjoining any enforcement of the suspension.

On October 26, 2011, the Court conducted a hearing on the motion. Having reviewed all the papers filed in support of, and in opposition to, Plaintiff's motion, and having considered the oral arguments of counsel, the Court hereby DENIES Plaintiff's motion for a temporary restraining order.

1

## FACTS

Guardrail is a Tennessee corporation that installs and maintains fencing and guardrail on roadway projects.[1] Guardrail has performed contracts with TDOT for more than twenty years and presently gets approximately ninety-six percent of its business from these contracts.

A federal criminal investigation into possible violations of federal antitrust laws in TDOT contract bidding began in 2004. Guardrail was subpoenad in 2006 but never prosecuted. On May 26, 2011, Kevin Peel, a vice-president of Guardrail, was indicted for obstruction of justice and related offenses arising out of his alleged destruction of documents subject to the grand jury subpoena.

Based on the indictment, TDOT sent Guardrail a notice of suspension of June 2, 2011. Citing TDOT rules governing contractor suspension and debarment, the notice imputed Peel's conduct to Guardrail because Peel acted in his capacity as a corporate officer. The suspension took effect immediately and will last until the conclusion of the criminal proceedings against Peel. The suspension precludes Guardrail from submitting a bid for or entering into any TDOT contract.

Pursuant to the notice and applicable rules, Guardrail contested the suspension in writing by letter dated July 5, 2011. The Government responded to the objection on August 19, 2011, issuing a decision letter to continue the suspension. Unless enjoined by this Court, the suspension will preclude Guardrail from submitting contract bids due on October 28.

## ANALYSIS

---

[1] The parties submitted no affidavits or other evidence with their motion papers. Therefore, the Court draws the facts from the verified complaint and the attached exhibits.

## I. Temporary Restraining Order Standard

The temporary restraining order is an "'extraordinary remed[y] which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it.'" *Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 682 (W.D. Tenn. 2009) (quoting *Ciavone v. McKee*, No. 1:08cv771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009)). The Court must assess four factors to determine if Plaintiff is entitled to a preliminary injunction: "(1) that [it] is likely to succeed on the merits, (2) that [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [its] favor, and (4) that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). The Court will address each of these factors, which are interrelated considerations that must be balanced together. *Ne. Ohio Coalition for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer. *Id.*

## II. Likelihood of Success on the Merits

The gravamen of Guardrail's complaint for injunctive relief is a claim pursuant to 42 U.S.C. section 1983 for the violation of Guardrail's procedural due process rights under the Fourteenth Amendment of the United States Constitution.[2] Guardrail contends that it was deprived of a constitutionally protected interest in future business without a hearing.

Defendants first contend that Eleventh Amendment sovereign immunity protects TDOT from suit, and they are correct. Black-letter law establishes that section 1983 does not override

---

[2] Guardrail's verified complaint includes a second count for violation of its due process rights under section 9 of the Tennessee Constitution. As this provision concerns the rights of defendants in criminal prosecutions and Plaintiff's motion has not argued for relief under this provision, the Court finds that Plaintiff has not established a likelihood of success on the merits of this second count.

3

"the well-established immunity of a State from being sued without its consent." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989); *see Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007) ("Congress has not abrogated states' immunity from § 1983 suits.") Guardrail has pointed to nothing that suggests TDOT has waived its immunity. Although TDOT is immune from suit, Guardrail's suit may proceed against Schroer and Hall in their official capacities for prospective injunctive relief to stop ongoing violations of law. *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011); *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002). Because Plaintiff asks for an injunction that will allow it to bid on TDOT contracts going forward, the Court construes Plaintiff's request for relief as prospective. Therefore, Plaintiff may be able to obtain relief against the individual defendants in their official capacities.

Next, the Court must determine whether Guardrail can identify a constitutionally protected interest that Defendants may have denied without due process. Guardrail asserts a property interest in the business that it will obtain from future TDOT contracts. However, Guardrail has failed to satisfy the Sixth Circuit's standard:

> a constitutionally protected property interest in a publicly bid contract can be demonstrated in two ways. A bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the [entity awarding the contract] had limited discretion, which it abused, in awarding the contract.

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 297 (6th Cir. 2006) (quoting *Enertech Elec. v. Mahoning Cnty. Comm'rs*, 85 F.3d 257, 260 (6th Cir. 1996)). Here, Guardrail is not alleging deprivation of contracts that it was actually awarded, nor has it pointed to any state law that limits TDOT's discretion in awarding contracts. To the extent Guardrail instead asserts a property interest in the right to bid on the contract, the Sixth Circuit's *Club Italia* decision squarely rejects that argument also. *Id.* (citing *TriHealth, Inc. v. Bd. of*

4

*Comm'rs*, 430 F.3d 783, 793 (6th Cir. 2005)). In the *TriHealth* decision, the Sixth Circuit explained that a party "cannot have a protected property interest in the *procedure* itself, whereby the contract was or ought to have been awarded." 430 F.3d at 793 (citing cases).

Other Sixth Circuit precedent, however, suggests that Guardrail has a different kind of protected interest at issue in this case:

> [w]hile the deprivation of the right to bid on government contracts is not a *property* interest (procurement statutes are for the benefit of the government, not bidders), the bidder's *liberty* interest is affected when that denial is based on charges of fraud and dishonesty. The minimum requirements of due process are notice and an opportunity for hearing appropriate to the nature of the case.

*Transco Sec., Inc. of Ohio v. Freeman*, 639 F.2d 318, 321 (6th Cir. 1981) (emphasis added) (citation omitted); *accord ATL, Inc. v. United States*, 736 F.2d 677, 682-83 (Fed. Cir. 1984); *Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 962-63 (D.C. Cir. 1980); *Mainelli v. United States*, 611 F. Supp. 606, 613 (D.R.I. 1985); *Shermco Indus. v. Sec'y of the Air Force*, 584 F. Supp. 76, 87-88 & n.7 (N.D. Tex. 1984). Applied to this case, Guardrail's suspension is based on charges of fraud or dishonesty because the Government has imputed Peel's alleged obstruction of justice to Guardrail.

Even given Guardrail's protectable liberty interest, Guardrail's claim is unlikely to succeed on the merits in its present posture because of the deferential standard of review that applies to this case. Here, Guardrail is challenging the Government's denial of an evidentiary hearing on the suspension and, by implication, the procedure for determining that Peel's conduct should be imputed to Guardrail, because Peel is a Guardrail officer and "the criminal conduct alleged in the indictment occurred in connection with Mr. Peel's performance of duties for or on behalf of Tennessee Guardrail, Inc., or with that organizations [sic] knowledge, approval or acquiescence . . . ." (Docket Entry No. 1-5, at 3.) To determine what process is due, the Court

5

must review the Defendants' grounds for issuing the suspension. Judicial review of an agency's findings of fact is conducted under an arbitrary and capricious standard.[3] *See Bobbitt v. Shell*, 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003) (Uniform Administrative Procedures Act); *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994) (writ of certiorari). Arbitrary and capricious review only overturns a result "'that is not based on any course of reasoning or exercise of judgment, or . . . that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.'" *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993)). Plaintiff's allegations at this point of the case, and with the evidence thus far presented, do not establish a likelihood that Guardrail will be able to surmount this high standard in challenging Defendants' finding that Peel is a Guardrail officer and should have his conduct imputed to Guardrail.

## III.     Irreparable Harm

Guardrail contends that its suspension will cause lost business to the extent that it may have to shut down. The Sixth Circuit has held that "financial ruin qualifies as irreparable harm." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005). In *Warren*, the court affirmed the order of a permanent injunction prohibiting the defendant city from setting up a barricade that rendered inoperable the drive-thru at the plaintiff's fast food restaurant. *Id.* at 712.

In this case, however, the Court finds that Guardrail has not shown that its temporary suspension will result in financial ruin. TDOT suspended Guardrail for the limited duration of Peel's criminal proceedings. By Guardrail's own estimation, those proceedings will conclude in

---

[3] By Guardrail's own admission at oral argument, the Court would conduct its review under an arbitrary and capricious standard in this case.

February of 2012, a mere four months away. Furthermore, Guardrail has not shown why its inability to bid for the two upcoming contracts will doom its business to failure. Although citing the October 28 deadlines for two TDOT contracts, Guardrail has not given the Court any information concerning how often these contracts come up for bidding. For example, after Guardrail misses the two upcoming bids, the next contracts may come up for bidding after the conclusion of Peel's criminal proceedings. Furthermore, concerning the imminent deadlines, Guardrail fails to provide the basis for its certainty that TDOT would select Guardrail, even if the Court enjoined Guardrail's suspension and enabled Guardrail to submit a bid. For all these reasons, the Court concludes that Guardrail has not made the requisite showing of irreparable injury.

## IV. Balance of Equities and Public Interest

In determining whether to allow injunctive relief, the Court "'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987)). Here, Plaintiff contends that it will go out of business if the Court does not issue the temporary restraining order but that the Government will suffer no harm from the lifting of Guardrail's suspension.

As explained in the previous section, Guardrail has not provided the proof to support its forceful rhetoric of the dire consequences to follow if it cannot bid on the two upcoming TDOT contracts. Furthermore, the Government has a strong interest in the integrity of its contractors and of the officers whose conduct may be imputed to those contractors, as well as in the proper expenditure of public funds. At this time, the Court finds that the balance of hardships does not significantly favor Plaintiff. Likewise, the public interest weights in favor of denying the

7

preliminary injunction. Despite the potentially severe consequences to Guardrail, the Court must abide by the deferential standard of review.

## **CONCLUSION**

For all of the reasons stated, Plaintiff's Motion for Temporary Restraining Order (Docket Entry No. 4) will be denied. The Court sets the matter for a preliminary injunction hearing to take place Monday, November 21, 2011, at 9:30 A.M. The court orders expedited discovery to take place in advance of the hearing. Any party served with written discovery shall respond within ten (10) days. Any party wishing to present live witnesses at the preliminary injunction hearing shall notify opposing counsel by the close of business on Friday, November 18, 2011, identifying the witness(es) and summarizing their expected testimony.

An appropriate Order shall be entered.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE